Good morning. Thanks for appearing remotely. I'm sorry for the delay. We had an acoustic problem here we had to solve. Otherwise, you'd be hearing us echoing through your speakers. This is a time set for the argument in Krause versus the county, and you may proceed. Good morning, Your Honors. May it please the court. Elizabeth Christie of Aspey, Watkins & Diesel on behalf of Jason Derek Krause. I'd like to reserve five minutes for rebuttal. This is a case about the limits of immunity for a government official who knowingly fabricates evidence in support of a criminal investigation using a forensic technique he himself laid groundwork to debunk in a report drafted years prior, and who failed to disclose that very report, undermining his forensic findings. Jay Krause served 10 and a half years in prison for a crime he did not commit. His conviction was a direct result of the constitutionally deficient investigation against him, in which Ernest Peel and other Arizona State and Yavapai County actors fabricated evidence against him, withhold material exculpatory evidence, and conducted a reckless investigation. The district court applied an incorrect and overbroad standard in determining that Ernest Peel was entitled to absolute witness immunity for all of his pre-testimonial activity. Applying the correct functional analysis, it is clear Peel is not entitled to absolute witness immunity for his pre-trial activity because his comparative bullet-let analysis offered evidentiary value wholly apart from his testimony at trial. What do you think is the line between testimonial and something that would be covered by absolute immunity, and then where that absolute immunity essentially ends? Your Honor, LISCR v. City of Los Angeles provides a test for that. It says that absolute immunity is provided to pre-trial activity that is inextricably tied to testimonial activity, and it gives the example of conspiracy to testify falsely. Now, that inextricably tied standard, essentially what that would entail is that the activity pre-trial cannot be divorced from the testimony, that it serves no other value to the process of a criminal case other than the testimony at trial. Here, Agent Peel's CBLA, the comparative bullet-let analysis, provided evidentiary value wholly apart from his testimony at trial. For one, it provided the only direct link between the bullet that killed the victim, Mr. Thurman, and J. Krause, the only direct link between the two of them. Counsel, but wasn't the expert report required for him to testify? Because under Rule 16, you have to provide a report before an expert witness can testify, so it was required, it was necessary for him to be a witness in this case. Your Honor, irrespective of its necessity for him to testify as a witness, the test is whether or not it was inextricably tied, meaning could that report offer value outside of testimony? And in this case, it did. First and foremost, the report was prepared. Aside from that, if it's necessary for him to testify, how is it not inextricably tied to his testimony? Because again, Your Honor, a criminal case is a process. It's a process in which it begins with probable cause to arrest, then probable cause to indict, and then after that, more evidence typically has to be generated in order to reach that beyond a reasonable doubt standard at trial. And during that process, as Lisker makes clear, evidence that has testimonial, that has, excuse me, evidentiary value aside from testimony, such as the ability to influence plea negotiations, which are substantially guided by the quality of a prosecutor's evidence, that is evidentiary value outside of testimony that the Lisker court holds would not be. So what do we do if it has two values, one that is evidentiary that you're talking about or plea negotiations, one that it's inextricably tied to the witness testimony? If it has both purposes, what do we do in that case? Yes, Your Honor. In that case, it would have to be, I would propose that it would have to be, and I believe that Lisker supports this, that it would have to be weighed on a scale to determine whether or not it was only connected to testimony. I believe that inextricably tied standard and the example that Lisker provides of conspiracy to testify falsely, I believe that that standard shows that it creates a very strong link, a very heavy burden to show that basically there was no value or the value outside of the testimony was so miniscule that it couldn't really be used for anything else besides testimony. Something, for example, if an expert were taking notes for himself to prepare himself for testimony, that might be inextricably tied. Again, conspiracy to testify falsely, that might be inextricably tied. But in a situation in which there's evidentiary value wholly apart, things like here, where the report itself completely changed Krause's defense attorney's strategy in trial, changing their strategy from a third party culpability defense to an accident defense, that the gun was discharged accidentally. And that Krause merely accidentally, mistakenly shot Charles Thurman. It modified the defense there. And again, it influenced plea negotiations. It guided further investigation, whether or not the officers and investigators in this case needed to pursue other leads. Or even just to find other evidence that directly tied Krause to that fatal bullet. How do you respond to the argument that that's going to be true in a lot of situations where there's expert testimony? There's going to be a disclosure of the expert's identity, for example, that could impact the trial strategy, just a disclosure on its own. And so we know there's going to be expert testimony. There are rules that then provide for the disclosure and other kinds of preliminary features of pretrial that could affect trial strategy, but they roll up into the testimony in a way that I think if you're right, there's going to be pretty limited absolute immunity outside of just the actual testimony. Your Honor, and I believe that the standard, the inextricably tied standard calls for very limited pretrial immunity, witness immunity. The absolute witness immunity is there to cover witness testimony. That is its primary function. And it's extended to pretrial activities when those are inextricably tied to testimony. Again, the main function is to support the testimony at trial, to encourage witnesses to come forward, to encourage witnesses to speak freely on the stand, to protect that judicial process. The further away from that testimony it gets, irrespective of whether or not it has some tenuous connection, which truthfully, most evidence and evidence gathering functions in a criminal process will likely have some connection to testimony at trial. The line that must be drawn is whether it's inextricably tied, because again, the main function is to protect that witness testimony. Even if you're right about this, obviously, there's still a question of whether qualified immunity would protect the expert's actions in the pretrial phase of this. So maybe you could address why you think qualified immunity wouldn't apply. Absolutely, Your Honor. And so to begin, I do want to emphasize that there are two claims, two primary claims against Defendant Peel. One is for fabrication of evidence. And the second is for a Brady violation, withholding his 1991 report in which he peeled, drafted findings after conducting a comparative bullet analysis study that showed that there were in a very small sample size of 16 boxes, of only 16 boxes, there were two examples of situations in which bullets from boxes manufactured months apart were analytically indistinguishable. And that report was cited beginning in 2002 when the criticism of CBLA began in earnest. That 1991 report that Agent Peel co-authored was cited by other reports criticizing comparative bullet analysis as an early example of evidence that this was not a reliable science. So Krauss does not only have the fabrication of evidence claim, but he has the Brady claim for failure to disclose that. Now, in qualified immunity, there's two questions, whether or not there was a constitutional violation and whether or not that was clearly established. With respect to fabrication of evidence under Devereux, Krauss must at a minimum show that Peel either, one, continued an investigation despite the fact that he knew or should have known Krauss was innocent, or two, that he used an investigative technique that was so coercive and abusive that Peel knew or should have known the technique would yield false information. Peel's conduct in conducting CBLA and representing it produced a reliable conclusion that the results could show, within a degree of scientific certainty, that bullets came, or even just likely came, from the same box, false squarely within the second prong of Devereux. While most commonly that prong is applied to forensic investigative techniques such as, or excuse me, non-forensic investigative techniques such as coercive interviewing techniques, this court's opinion in Kastanik shows that those two prongs of Devereux are only two examples of the minimum standard of proving fabrication. And functionally, there's no material distinction between interviewing tactics likely to produce false testimony and junk science likely to produce false evidence. How do you address the fact that this CBLA analysis now is understood to be unreliable, but at the time that's not really clear? Absolutely, Your Honor. That's addressed through the 1991 report. Peel himself was retained in Krauss' criminal case in 1994, and about three years prior, in 1991, he drafted that report with findings that undermined the reliability of CBLA. He had actual knowledge that the forensic method was unreliable. But on qualified immunity, we're looking at an objective standard, not a subjective standard, correct? Absolutely, Your Honor. And if that objective standard here is that it's an objective standard that if there is reason to know, if he knew or should have known that a method was unreliable, here Peel had actual knowledge that this method was unreliable. Is that too strong of an assertion? Because I think he may have had questions about whether it was reliable, but to say he had actual knowledge that it was unreliable, I'm not sure where that would be found. Your Honor, well, first and foremost, and I notice I have two minutes, so I will try to make this brief and reserve my time. But first and foremost, we are very early. We have not been afforded the opportunity to conduct significant discovery in this case. We're merely at the pleading stages. What we have asserted is that he did have that actual knowledge based on the inference that can be drawn from that report he wrote in 1991. Now, we anticipate that further discovery would provide additional evidence of his actual knowledge. But again, we have not been afforded that opportunity. If I may reserve the remainder of my time. Thank you, counsel. Thank you. We'll hear from the county. I would like to present to counsel is Mr. Peel. Yes, Your Honor. The county is not part. Of this appeal. Thanks for the correction. You're welcome, Your Honor. Is this court is being asked to find that an expert witness can decades after his involvement as an expert witness. Be subject to a civil suit for his use of a scientific methodology that was later renounced. Even though at the time that he used it, it was widely accepted and regularly admitted by the courts. To that end, Mr. Krauss has repeatedly characterized Mr. Peel's use of as a fabrication of evidence. It is not more importantly, though, if expert witnesses are stripped of their immunities for their use of widely accepted scientific methodologies. That are the reason that they are connected to a case in the first place. Merely on the possibility that that case or excuse me, that methodology could later fall on disfavor for whatever reason. That is going to have a chilling effect on expert witnesses participation in the courts and in court proceedings moving forward. We ask that this court affirm the dismissal of Mr. Peel on the basis of absolute immunity. Because both his use of C.B.L.A. and his preparation of a report on the basis of C.B.L.A. was not investigatory, but rather in preparation for trial. However, should this court decline to affirm on the basis of absolute immunity? We ask that the court nevertheless affirm on the basis of any one of or a combination of three other reasons that were argued in briefing to this court. Those include, first, that in the mid-1990s, there was no clearly established right against an expert's use of a widely accepted scientific methodology. On the possibility that that methodology could later fall on disfavor. In other words, Mr. Peel's conduct is shielded by qualified immunity. Secondly, because the statute of limitations for Mr. Krause's claims against Mr. Peel had long expired by the time he filed his lawsuit against Mr. Peel. Although state law controls the statute of limitations, the accrual analysis is controlled by federal law. This court's decision in Jackson v. Barnes controls the analysis in this case. Excuse me. And finally, I'm sorry. So under under Jackson v. Barnes, the date of accrual for Mr. Krause's claims against Mr. Peel would have been the date the Arizona Court of Appeals invalidated the conviction, which was July 5th of 2016. Mr. Krause did not ultimately file suit against Mr. Peel until February 20th of 2019. And finally, should this court allow Mr. Krause to pursue his claims against Mr. Peel, it would require that this court create an entirely new implied damages remedy under Bivens and its progeny. We know that this is a disfavored step because it would require that the court essentially disregard the separation of powers between between the various branches of our government and here in particular between the judicial and legislative branches. Turning first to the absolute immunity analysis, your honors, this is a singular test and it is a functional analysis. The courts look to whether the conduct in question is investigatory in nature or whether it's something that's preparatory to trial or part of that judicial phase of the process. Counsel, if I might interrupt for a second in the functional analysis requires a fat somewhat of a factual determination. And here we have a motion to dismiss, for example, if the testimony was, look, we hired him to testify and that's what he did. That's one thing. If we hired him to investigate, it may result in a different functional analysis. So I guess my question to you is, why isn't that a genuine issue of fact, at least this stage, considering the pleadings in the most polite, most favorable to the plaintiff that would require the case to go forward with discovery? You might win a summary judgment, but but why doesn't why doesn't this issue require further factual discovery? Your Honor, it doesn't require that because Mr. Peel, I mean, it's it's clear that the claims against Mr. Peeler as an expert witness, that's what's clearly alleged in the complaint in this in the First Amendment complaint. And we know specifically what the claims are in this case. The claim is that Mr. Peel essentially should have known that CBL was unreliable because of this 1991 report and that he used it. And that's that's essentially the basis of it. There's no allegation that he was some sort of a separate investigator. He was retained as an expert witness. He was retained as an expert, although that's not really in the record. We don't know from the record, as far as I can tell, whether he was retained to investigate or retained to testify. He investigated and then he prepared a report and testified. So I guess my question is, I mean, it's looking at the functional analysis. There may be a factual issue here that requires further discovery. I think based on what what is in the record thus far, I think that the court actually can make a determination as to whether that conduct was investigatory or whether it serves that preparatory purpose. I think that you can look at a number of factors that we know from the complaint and the pleadings below. We know I don't think there's any dispute that Mr. Peel never came to Arizona. He didn't visit the crime scene. He wasn't gathering evidence. We know what the investigatory we know from this court, what investigatory conduct is. It includes things like gathering evidence, interviewing witnesses, making a determination that a crime has actually been committed. We know that Mr. Peel didn't do any of those things. I don't think there's any dispute over that. We also know that Mr. Peel was retained to evaluate evidence. And we know that evaluation and analysis of evidence tends to fall in that judicial phase of a criminal process. So I think that there is actually sufficient information to conclude that his role was not investigatory, but rather in preparation for trial. I think you can crystallize this a little bit further by knowing what his work wasn't, what its purpose was and what it wasn't. And we know that Mr. Peel's the purpose of his work didn't serve to make that determination that a crime had happened. It didn't serve to narrow a list of suspects. It wasn't used to help generate probable cause to arrest Mr. Peel. And it wasn't used to determine which charges to bring against Mr. Cross. Let's assume hypothetically that he tested the bullets and came out with the conclusion that they weren't related. I mean, that's an investigation, and certainly that would have altered the outcome of the proceedings. Sure, sure. But that's actually not, I mean, you're raising an interesting point, and that's not really what has even happened here. The thrust of the claims against Mr. Peel are that he knew that this methodology was unreliable, and yet he used it anyway, and he shouldn't have done that. There's no allegation that he… I'm just trying to get at that. One of the problems with this absolute immunity functional analysis test is that it sort of seems to be in the eye of the beholder in a particular case. And I think we're struggling a little bit to say how do you draw that line? And my question is, how do you draw the line without the record being developed in this case? Yeah, I mean, I understand the court's hesitation, and it is something that I don't… I think the reason it's difficult to draw a line is because it isn't something where there is a line. It is something where courts have to look at all of the factors that courts take into consideration. But I don't think that the district court improperly drew a line. I think the district court properly took into consideration a variety of factors. But even if this court should disagree and find that Mr. Peel's conduct was actually investigatory in nature, then I think Mr. Krause still can't overcome qualified immunity based on the nature of Mr. Peel's conduct. Qualified immunity, as this court knows, requires that Mr. Krause be able to establish or demonstrate that the right that was allegedly violated was a clearly established right at the time of the conduct in question. In this case, Mr. Krause does not do that. He cites to a variety of cases that really set forth a more generalized right. Devereux is obviously this idea of the right against fabricated evidence used in a prosecution. That is very different than what we have here. We have an expert who is using a methodology that is widely accepted. Even if he had some idea that it wasn't a reliable methodology, there's still that tension that would require that there be some evidence or some case law to establish that that right was clearly established at the time. And Mr. Krause, unfortunately, does not do that. We know from White v. Pauley, this court's decision in Hamby v. Anderson, that courts require that the right in question must be particularized to the facts of the case. Again, Mr. Krause does not do that in his briefing. Also, can you respond to the Brady aspect of this that your friend on the other side raised? Sure. Well, first of all, we don't concede that the 1991 paper is Brady material. It wouldn't obviously have been part of the investigatory file to the extent that it is something that would be produced. It would have, you know, obviously in connection with his being an expert. That's something that a prosecutor would do. And so that really falls also within, you know, the absolute immunity prosecutorial discretion, essentially. And so we don't think that that's applicable here. Additionally, you know, the paper, you know, the paper itself, there is a lot of argument about, you know, oh, it sort of foretold the eventual demise of CBLA, which is true. But even the Supreme Court notes in that Maryland v. Kulbicki case that the paper itself ultimately concluded that CBLA was still reliable. So I don't think that the Brady the Brady allegations are really applicable in this particular case. Don't you think this report should have been disclosed? I don't think that there was an obligation to for Mr. Peel to disclose it. I think that to the extent again, Mr. Peel wasn't really part of the investigatory team. And the paper written in 1991 wouldn't have been part of a criminal investigatory file for a crime that occurred in 1994. So I think that to the extent that it should have been disclosed in the process of the litigation. Again, I don't think that that's on Mr. Peel to do. I don't know if that answers your question. I do want to get to the statute of limitations question, because if the, you know, if the court wants to avoid the immunity analysis, I think that it can do that altogether. Can I ask one question on qualified immunity before you go there? What is the clearly established right that has to be known before you find qualified immunity or not find qualified immunity? Is it about CBLA itself or just the generalized context that an expert witness that knows that his expert testimony is wrong and then testifies anyway? Is that the clearly established right? I think it's closer to the latter. I would probably refine it a little bit. I think it's too particularized to try to say CBLA. I think that there has to be a clearly established right that an expert essentially is violating a right by fabricating evidence when that methodology that is being used to fabricate the evidence is widely accepted and regularly admitted by the courts. I mean, you can understand why it might not be super clear that even if an expert had doubts about a methodology that he was using, that while it's being used, it's being obviously he's performing this CBLA in the FBI laboratory. So it's still something that's in use. It's being admitted by the courts. And so I think that they would have to show that that's the right that's clearly established. But I think getting back to the getting back to the Brady question, there's no question Brady was clearly established at the time. Right. But Brady, like all of the cases, for example, your answer to Judge Bress's question was an argument about why Brady didn't apply. But certainly it was clearly established. Yeah, Brady itself was clearly established. I'm not sure that it applies to Mr. Peel as an expert witness. And I think that is maybe the question that we have here. So I think I would like to my position would be that it would need to be clearly established for experts. I'm not sure if that helps clarify our position, but I see that my time is running down and I do want to try to get to the statute of limitations issue. The statute of limitations in this case. I don't think there's any dispute is determined by state law. It's two year statute of limitations here in Arizona, but it's federal law. It's under Wallace v. Cato. It's federal law that determines the accrual analysis. If this court allows Mr. Krause's claims to proceed against Mr. Peel, that result will be in direct contradiction with Jackson v. Barnes. Jackson v. Barnes decision controls the analysis here under Jackson v. Barnes. The the claims accrue when the first conviction has been invalidated. In this case, Mr. Krause's claims were invalidated as of the date of the mandate from the Arizona Court of Appeals. That was July 5th of 2016. If you were to apply the rule of accrual that Mr. Krause is setting forth to the case in Jackson, then Mr. Jackson would be stripped of any ability to have brought a civil rights claim whatsoever. The cases are similar because in Jackson, the first conviction was essentially overturned on the basis of tainted evidence obtained in violation of his civil rights. The same is true here. Mr. Krause's conviction was essentially invalidated because of tainted evidence allegedly obtained in violation. Your position is that if the state had retried him, then a heck bar might come into place at that point. But until it had done so, once the conviction had been vacated, it had accrued at that point. No, I don't think it I don't think it matters whether the second trial I'm not sure if I'm understanding your question, but I don't think it matters whether the second trial actually happened or didn't happen, because if the second trial had happened, it would have been without any evidence regarding CBLA whatsoever. There's no dispute about that. CBLA was already gone. Mr. Peel had been retired. The FBI had discontinued it. So there was no possibility that CBLA could have been presented at the second trial. So any potential second conviction would have been without the benefit of that evidence. The same was true in the Jackson case in Jackson, where Mr. Jackson had his initial conviction was overturned because of a violation of his civil rights and evidence that was presented in connection with that. They went ahead and they tried him the second time and importantly, he was convicted. So in that case, again, if if he had been convicted, he wouldn't have had the if we were to apply the rule that's endorsed by Mr. Krause, he wouldn't have had the ability to to bring a civil rights suit for the initial civil rights violation in the first place. I don't think that's the rule that this court wants to apply. I believe I believe this is a really clear and controlling case. And I encourage the court to take a look at it. I see I'm over my time. I thank you for your time and request that this court affirm. Thank you, counsel. Thank you, Your Honors. Your Honor, my my opponent emphasizes that CBLA at the time of the of Mr. Krause's criminal case was widely accepted and regularly admitted. That is true, however, again, Peale in this case had actual knowledge of its invalidity. Applying the standard that Peale requests in this case would essentially create a rule in which a forensic expert who discovers with evidence showing that the forensic method he applies is invalid, is unreliable, is not science, is not within the bounds of if we were allow you to proceed and can take discovery. What other facts could you draw out to improve your case? Your Honor, I believe that we can draw out various facts, including Peale's knowledge. We can take depositions of his knowledge. We can we can draw out facts regarding his conspiracy. The communications that he had with other defendants to try and to try and frame Mr. Krause in this case, we can draw out evidence of. That's all speculative, right? There's nothing to you have no evidence to suggest that that exists. Your Honor, we have not had the opportunity to take depositions in this case of any of the officers, nor of Mr. Peale as. But is there any evidence of a conspiracy to frame Mr. Peale? Your Honor? Yes, there there is some evidence that suggests that namely. The. There is evidence to suggest that namely the fact that this this. The victim in this case was an individual connected to a political family, a high political family, that there was strong pressure to try and pin someone that multiple members of the investigative team knew. The other the other passengers that were in the car, the fact that that the investigation was so poorly done, what it would all be indication that there was some conspiracy here. Your Honor, I noticed that my my I'm over my time unless there are further questions. I would I would respectfully request the court the court overrule the district court's opinion in this case. Thank you, counsel. Thank you both for your arguments today. The case just argued will be submitted for decision.
judges: Thomas, Bress, Bumatay